**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard E. WOODRING, Defendant-Appellant.**

**No. 25445.**

United States Court of Appeals, Ninth Circuit.

June 21, 1971.

Rehearing Denied July 21, 1971.

**750**

Lee A. Holley, Seattle, Wash., for defendant-appellant.

Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., Larry S. Flax, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before MERRILL, DUNIWAY and KILKENNY, Circuit Judges.

MERRILL, Circuit Judge:

Woodring appeals from his conviction for violating 18 U.S.C. § 472 (possessing counterfeit money with intent to defraud). We affirm.

Woodring challenges on several grounds, the legality of the search of his rented house, made pursuant to a warrant, and the subsequent seizure of certain counterfeit bills that were admitted into evidence against him at trial.

First, Woodring argues that the affidavit in support of a search warrant was insufficient because it recited only observations of "outwardly innocent" acts and information from informants of untested reliability. We disagree. The information provided by informant Matthews, who identified Woodring as a manufacturer of counterfeit money, was sufficient to support the issuance of a search warrant. Matthews was, by his own admission, a participant in the crime of passing counterfeit notes. His story was corroborated by information obtained from eye witnesses.[1] Under these circumstances, reliance on the information provided by him was justified. *See* United States v. Mahler, 442 F.2d 1172 (9th Cir. May 27, 1971); United States v. Mendoza, 441 F.2d 1107 (9th Cir. 1971); Musgrove v. Eyman, 435 F.2d 1235 (9th Cir. 1971); United States v. Jiminez-Badilla, 434 F.2d 170 (9th Cir. 1970); *Cf.* Spinelli v. United States, 393 U.S. 410, 425, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) (White, J., concurring).

Woodring's second contention is that the officers executing the warrant rendered the search unlawful by breaking into the house without complying with the statutory requirement that they first be refused admittance.[2] We

---

1. It is irrelevant that the observations of eye witnesses did not, in and of themselves, establish that Woodring was engaged in illegal counterfeiting. Sufficient corroboration may be found in observations that do not relate directly to the criminal activity itself. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

2. 18 U.S.C. § 3109 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

do not agree. The statutory requirement of refused admittance may be implied from all the circumstances. *See* McClure v. United States, 332 F.2d 19 (9th Cir. 1964). The officers in this case had reasonable cause to believe that someone was within the house. They knocked loudly at the door, announced their authority and purpose, and waited approximately one minute before breaking in. Under these circumstances there was adequate reason to believe that permission to enter had been denied, and the requirements of 18 U.S.C. § 3109 were satisfied. *See* Martin v. United States, 341 F.2d 576 (5th Cir. 1965); United States v. West, 328 F.2d 16, 18 (2d Cir. 1964).

■ Woodring argues next that the search and seizure were invalid because the search warrant was not in the officers' physical possession at the time of forced entry. Under all the circumstances presented here we reject this argument. Before the officers entered Woodring's house they had received information over police radio that a search warrant had been obtained and was on its way. No one asked to see the warrant authorizing the officers' entry, and there was no resistance to the search. "[T]he Federal Rules of Criminal Procedure [do not] impose an inflexible requirement of prior notice. Rule 41(d) does require federal officers to serve upon the person searched a copy of the warrant and a receipt describing the material obtained, but it does not invariably require that this be done before the search takes place." Katz v. United States, 389 U.S. 347, 356 n. 16, 88 S.Ct. 507, 513, 19 L.Ed.2d 576 (1967). *See* Nordelli v. United States, 24 F.2d 665, 666–667 (9th Cir. 1928).

■ Finally, Woodring urges that the search warrant, which authorized daytime service only, was improperly executed because it did not arrive at the premises until an hour and a half after sunset. It is undisputed that the officers in this case entered Woodring's house during "daylight." In the unique circumstances of this case, where entry without physical possession of a warrant was otherwise lawful and there was no resistance to the search, we think that the requirement of daylight service was sufficiently satisfied by the fact that the officers initiated the search during daylight and left a copy of the warrant on the premises during the course of the search. *See also* United States v. Joseph, 278 F.2d 504 (3d Cir. 1960).

We conclude that the search and seizure were proper.

■■ During trial, after the defense rested but before final arguments by counsel, the District Court permitted the Government to reopen its case and, on stipulation of defense counsel, to introduce as to Count Two (the count on which Woodring was convicted), evidence that previously had been offered as to another count. Woodring contends that the reopening of the Government's case was barred by the Fifth Amendment's double jeopardy clause. We disagree.

A trial judge has wide discretion to permit the prosecution to reopen and to introduce evidence after it has rested its case inadvertently. *See, e. g.,* United States v. Glass, 421 F.2d 832 (9th Cir. 1969); United States v. Williams, 336 F.2d 183 (2d Cir.), cert. denied, 379 U.S. 857, 85 S.Ct. 112, 13 L.Ed.2d 60 (1964); Morgan v. United States, 111 U.S.App.D.C. 127, 294 F.2d 911 (1961), cert. denied, 368 U.S. 978, 82 S.Ct. 482, 7 L.Ed.2d 439 (1962). Reopening did not initiate new proceedings and Woodring's initial jeopardy continued uninterrupted. *Cf.* Green v. United States, 355 U.S. 184, 191, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

Finally Woodring contends that there was insufficient evidence of the elements of possession and intent to defraud. We find ample circumstantial evidence in the record to establish these elements.

Judgment affirmed.