**UNITED STATES of America, Appellee,**

v.

**Russell BONNER, Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Wayne BONNER, Defendant, Appellant.**

Nos. 86–1327, 86–1328.

United States Court of Appeals,
First Circuit.

Argued Sept. 3, 1986.

Decided Dec. 30, 1986.

Carmin C. Reiss, Federal Defender Office, and Edward A. Gottlieb with whom Coyne & Gottlieb, Boston, Mass., were on joint brief for defendants-appellants.

Ralph C. Martin, II, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and CARTER,* District Judge.

TORRUELLA, Circuit Judge.

This is a consolidated appeal from judgments entered in the United States District Court for the District of Massachusetts convicting defendants, now appellants, Russell Bonner and Wayne Bonner, of one count alleging the manufacture of amphetamine, a violation of 21 U.S.C. § 841(a)(1), and one count alleging a conspiracy to manufacture amphetamine, a violation of 21 U.S.C. § 846. Defendants are appealing the denial by the district court of their motions to suppress evidence. We affirm the order of the district court.

*Background*

In September 1985, the Drug Enforcement Administration (DEA) began an investigation of two brothers, Russell and Wayne Bonner. The Bonner residence was placed under regular surveillance. In November 1985, a DEA agent applied to a United States Magistrate for a search warrant and arrest warrants for the Bonners. The affidavit outlined the investigation and contained a detailed physical description of the premises,[1] as well as a detailed description of the items to be seized, and the address.[2] The Magistrate found "more than probable cause" to issue the warrants. Attached to the search warrant was the same description of the premises that was contained in the affidavit (see footnote 1); the exact address, however, was not included. Upon the issuance of the warrants, the DEA agent promptly telephoned the "case agent" in charge of the investigation, who had conducted surveillance of the premises in question on at least ten prior occasions. The case agent was waiting with other

---

* Of the District of Maine, sitting by designation.

1. "The properties to be searched are a blue, wood-frame ranch style house with white trim and blue printed shingles with a screened porch on the back and two solar panels on the roof; a white trailer behind the house; and a barn-like structure in dilapidated condition of unpainted aged wood. There is a mailbox bearing the name Bonner in front of the residence. Adjacent to the residence is a detached two car garage with two separate bays and two separate white garage doors. Both the trailer and barn have a white electrical cable running from them to the house."

2. "I have reason to believe that there is concealed at the premises of 444 Slater Street, Attleboro, Massachusetts and in adjacent buildings and structures on the property and in the AMC Hornet vehicle described above and below there is [sic] located controlled substances, to wit, phenylacetone and amphetamine precursor chemicals, including, but not limited to acetic anhydride, sodium acetate, phenyl acetic acid, formamide, hydrochloric acid and others, glassware, equipment and other paraphernalia used in the illegal manufacture of controlled substances, books, records and other documents showing chemical formulas and methods of synthesizing controlled substances or precursors of controlled substances, or showing orders for or purchases of precursor chemicals or equipment or other paraphernalia used in the illegal manufacturing of controlled substances, or showing residence or dominion over the property where such items are found, all in violation of Title 21, U.S.C. §§ 841(a)(1) and 846."

agents near the Bonner residence and immediately commenced the search.

Shortly after the search warrant was issued, the Magistrate discovered the omission of the address. He ordered the search suspended; at that point, 45 minutes into the search, several items had been observed and seized. Within the hour, the Magistrate issued a second warrant, which included the address, and the search was resumed. The agents searched the entire Bonner residence, the two-car garage, a barn, and a trailer.

The appellants contend that any evidence found during the initial search must be suppressed because it was seized in reliance on a defective search warrant. They also assert that the evidence found in the garage should be suppressed because the garage was not included in the description of places to be searched. Finally, they contend that the search improperly began before the search warrant actually arrived on the scene.

### The Omission of the Address

The Fourth Amendment states that "no warrants shall issue, but upon probable cause, ... and particularly describing the place to be searched...." The manifest purpose of the particularity requirement of the Fourth Amendment is to prevent wide-ranging general searches by the police. *United States v. Leon,* 468 U.S. 897, 963, 104 S.Ct. 3405, 3430, 82 L.Ed.2d 677 (Stevens, J., dissenting) (1984).

The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient "to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Turner,* 770 F.2d 1508, 1510 (9th Cir.1985); *United States v. McCain,* 677 F.2d 657, 660 (8th Cir.1982); *United States v. Gitcho,* 601 F.2d 369, 371 (8th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).

In *Turner,* a warrant having an incorrect street address two-tenths of a mile from the intended location was upheld. 770 F.2d 1508. The house had been under surveillance, the warrant was executed by an officer who had participated in the surveillance, and the premises that were searched were those actually intended. *Turner,* 770 F.2d at 1511. The first prong of the sufficiency test was met because "the verbal description contained in the warrant described the house to be searched with great particularity." *Id.* The above factors are present in the instant case. Additionally, the physical description here is even more limiting, because it includes a mailbox with the name "Bonner" in front of the residence. Appellants assert that there are thirteen telephone directory listings for Bonner in the Attleboro, Massachusetts area. It is highly unlikely, however, that the residences of these other Bonners would fit the particularized physical description provided for in the warrant.

In the *Gitcho* case, although the only description of the location to be searched was an incorrect street address, the court found it to be sufficient because it was unlikely that the wrong premises would be searched, and the agents executing the warrant personally knew the location to be searched. Here, the case agent executing the warrant had conducted surveillance of the Bonner residence on at least ten prior occasions. *Gitcho,* 601 F.2d at 372. Similarly, in *United States v. Hassell,* the warrant's only description of the place to be searched was "the Howard Hassell farm." The court held that this description was sufficient to allow officers to ascertain the place to be searched, especially where three officers remained at the scene while one officer obtained the search warrant. *United States v. Hassell,* 427 F.2d 348, 349 (6th Cir.1970).

■ The warrant here, considering the circumstances of its issuance and execution, suffered from a minor, technical omission. There was no risk that federal agents would be confused and stumble into the wrong house, or would take advantage of their unforeseeable windfall and search

houses indiscriminately. The agents, having previously conducted the surveillance, knew exactly which house they wanted to search, described it accurately and in detail in their affidavit, and searched only that house without delay after the warrant issued. We hold that the Bonner residence was described with sufficient particularity, and although the address was inadvertently omitted, there was no reasonable probability that another premises might be mistakenly searched; thus, the search warrant was valid.

■ Even assuming that the search warrant was invalid due to the omission of the address, the evidence was properly admitted under the good faith exception to the warrant requirement. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), *on remand,* 746 F.2d 1488 (9th Cir.); *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). In *Leon,* the Supreme Court held that evidence seized by police officers acting in objectively reasonable good faith reliance on a search warrant issued by a neutral and detached magistrate, but ultimately found to be unsupported by probable cause, need not be suppressed. The exclusionary rule should be limited to those situations where its remedial objectives are best served, i.e., to deter illegal police conduct, not mistakes by judges and magistrates. *Id.,* 468 U.S. at 908 and 916, 104 S.Ct. at 3413 and 3418.

In *Sheppard,* the Court applied the *Leon* test to a search warrant deficient in the description of the items to be seized. The affidavit presented by the police detective sufficiently described the items to be seized, however, the magistrate failed to incorporate the affidavit into the warrant. The Court held that the officers had an objective, reasonable basis for their mistaken belief that the warrant authorized a search for the materials outlined in the affidavit. *Sheppard,* 468 U.S. 988, 104 S.Ct. 3428. The Court noted that the officers took every step that could reasonably be expected of them to ensure that the search was legal. *Id.* at 989, 104 S.Ct. at 3429.

In the instant case, the agents also took every step that could reasonably be expected of them. An affidavit was prepared and presented to a neutral magistrate. After grammatical corrections were made by the magistrate, who concluded that probable cause was established, the search warrant was issued, with the detailed physical description of the premises taken from the affidavit attached onto the warrant. At this point, the agent had an objective, reasonable basis to believe that the fourth amendment's warrant requirement was satisfied. The responsibility for the inadvertent omission of the address on the warrant itself, must be borne by the magistrate, as the final reviewing authority. And, as the exclusionary rule does not serve to deter the errors of judges, but rather the errors of police officers, this court must conclude that it is inappropriate here. *Leon,* 468 U.S. at 916, 104 S.Ct. at 3418.

### The Scope of the Warrant

Appellants contend the DEA agents went beyond the scope of the search warrant when they searched the detached two-door garage. According to appellants, the garage was included in the property description in the warrant and the affidavit (see footnote 1) only to help locate the property, not as an area to be searched.

■ The fourth amendment serves to protect the individual's interest in privacy. Any search intruding upon that privacy interest must be justified by probable cause and must satisfy the particularity requirement, which limits the scope and intensity of the search. *United States v. Heldt,* 668 F.2d 1238, 1256 (D.C.Cir.1981). When investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity. *Id.* at 1257. The concern here is the particularity requirement's limitation on the area to be covered by the search operation.

■ The authority to search granted by any warrant is limited to the specific places described in it, and does not extend to additional or different places. *See, e.g., United States v. Principe,* 499 F.2d 1135, 1137 (1st Cir.1974); *Keiningham v. United States,* 287 F.2d 126, 129 (D.C.Cir.1960). However, search warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); *United States v. Ventresca,* 380 U.S. 102, 108–109, 85 S.Ct. 741, 745–746, 13 L.Ed.2d 684 (1965). For example, warrants authorizing a search of "premises" at a certain address authorize a search of the buildings standing on that land. *United States v. Williams,* 687 F.2d 290, 293 (9th Cir.1982); *United States v. Meyer,* 417 F.2d 1020, 1023 (8th Cir.1969). In a recent decision by this court, a warrant authorizing a search of "the premises known as a single family trailer ... with attached carport ..." was held to include a disabled car, parked adjacent to the carport, and a birdhouse hanging from a tree about 15' from the trailer steps. *United States v. Asselin,* 775 F.2d 445, 447 (1st Cir.1985).

■ In *United States v. Napoli,* 530 F.2d 1198, 1200 (5th Cir.1976), the court held that a warrant specifying "on the premises known as 3027 Napoleon Avenue," although limited by the language "being in a large, multiple story, wooden-frame residential dwelling," was sufficient to embrace the vehicle parked in the driveway on those premises. The warrant in the instant case was likewise sufficient to embrace the garage located on the Bonner property. *See also United States v. Long,* 449 F.2d 288 (8th Cir.1971) (trash barrel outside building held to be part of "premises" where warrant contained address and description of "a one-story red brick structure ...").

In the present case, the word "properties" was used in the warrant instead of "premises"; these words are sufficiently synonymous to be considered interchangeable. In *United States v. Heldt,* 668 F.2d 1238, 1265 (D.C.Cir.1981), the language "suite of offices of Mr. Heldt" was given just as broad an interpretation as "premises" was given in *Asselin, supra.* The court looked at the question of whether or not a free-standing office, not mentioned in the warrant, belonging to a person who did not work for Heldt, could reasonably have been viewed by the searching agents as constituting part of "the suite of offices of Mr. Heldt." *Heldt,* 668 F.2d at 1263. The office was reasonably considered by the searching agents as part of, or even appurtenant to, the "properties" to be searched. *Id.* at 1265. *See also United States v. Principe,* 499 F.2d 1135 (1st Cir.1974) (where warrant authorized search of particular apartment in building, and cabinet was three to six feet away from entrance to apartment in small hallway opposite door to apartment, officers executing search warrant could reasonably suppose cabinet was appurtenant to apartment).

It is apparent from the preceding case law that if the "detached two car garage" had never been mentioned in the warrant, it would have been reasonably considered within the scope of the warrant. It should not be precluded from the scope of the warrant simply because it was included in a careless manner, giving rise to the ambiguity of whether it was intended merely as a descriptor of the property, or as an area to be searched. But it is clear from the affidavit that the agents did intend to search the garage. The affidavit contains the observation that one of the defendants drove his car into the garage after he was known to have purchased a small quantity of a particular chemical. Granting some ambiguity, the imprecision did not leave so much to the discretion of the officers executing the warrant, that it can fairly be said the warrant authorized an unbounded general search in violation of the particularity requirement. *See Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927).

*Possession of Warrant*

■ Finally, appellants contend that the evidence seized should have been sup-

pressed because the search warrant was not in the agents' physical possession at the time of entry. We disagree. "[T]he Federal Rules of Criminal Procedure [do not] impose an inflexible requirement of prior notice. Rule 41(d) does require federal officers to serve upon the person searched a copy of the warrant and a receipt describing the material obtained, but it does not invariably require that this be done before the search takes place." *Katz v. United States,* 389 U.S. 347, 356 n. 16, 88 S.Ct. 507, 513 n. 16, 19 L.Ed.2d 576 (1967). *See also United States v. Woodring,* 444 F.2d 749, 751 (9th Cir.1971).

Courts have repeatedly upheld searches conducted by law enforcement officials notified by telephone or radio once the search warrant issued. *See, e.g., United States v. Marx,* 635 F.2d 436, 440 (5th Cir.1981) (suitcases seized at the time of defendant's arrest searched by DEA agent after telephone call from DEA agent who applied for and received search warrant, and warrant given to defendant the day after the search); *United States v. Cooper,* 421 F.Supp. 804, 805 (W.D.Tenn.1976) (federal officers searched house after told by radio that search warrant issued by federal magistrate, and warrant arrives an hour and a half after the search started); *United States v. Woodring, supra,* 444 F.2d at 751 (police officers searched house after learning over police radio that a search warrant had issued and was on its way to premises, and warrant arrives an hour and a half after search started).

The rationale of these decisions fully applies here. "Violations of Rule 41(d) are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice ..." *United States v. Marx, supra,* 635 F.2d at 441. *See also United States v. Dauphinee,* 538 F.2d 1, 3 (1st Cir.1976). To show prejudice, defendants must show that they "were subjected to a search that might not have occurred or would not have been so abrasive had [Rule 41(d)] been followed." *United States v. Marx,* 635 F.2d at 441; *United States v. Burke,* 517 F.2d 377, 386 (2d Cir.1975).

Appellants have shown neither type of prejudice.

Accordingly, the district court correctly denied appellants' motion to suppress.

*Affirmed.*

CARTER, District Judge (dissenting in part and concurring in part).

I concur in the majority's conclusion that evidence seized under the warrant issued herein containing no address of the property to be searched need not be suppressed because of the executing officer's good-faith reliance upon a warrant issued by a neutral, detached magistrate under the doctrine of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). I dissent, however, from the majority's adoption of the rationale that the first warrant issued was not defective because the officers who executed it possessed in their minds information particular to the premises *intended* to be searched sufficient to obviate an unreasonable likelihood of a mistaken search of the wrong premises pursuant to the warrant.

It is fundamental fourth amendment law that the protections afforded by the amendment are to be secured by the facial language of the warrant when issued. *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927); *United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir.1976); *United States v. Marti,* 421 F.2d 1263, 1268 (2d Cir.1970), *cert. denied,* 404 U.S. 947, 92 S.Ct. 287, 30 L.Ed.2d 264 (1971). The sufficiency of a warrant is to be judged from the warrant and its attachments. *E.g., In re Lafayette Academy, Inc.,* 610 F.2d 1, 4–5 (1st Cir.1979); *United States v. Klein,* 565 F.2d 183, 186 n. 3 (1st Cir.1977); *Johnson,* 541 F.2d at 1315; *United States v. Womack,* 509 F.2d 368, 382 (D.C.Cir.1974), *cert. denied,* 422 U.S. 1022, 95 S.Ct. 2644, 45 L.Ed.2d 681 (1975); *Huffman v. United States,* 470 F.2d 386, 393 n. 7 (D.C.Cir.1971), *rev'd on reh'g on other ground,* 502 F.2d 419 (1974); *Moore v. United States,* 461 F.2d 1236, 1238 (D.C. Cir.1972). I see no valid analytical reason

to depart from these principles in measuring the sufficiency of the first warrant to be issued here. If those principles are applied to this warrant, it is apparent that it does not describe the premises authorized to be searched with sufficient particularity, by reason of the total absence of any street or municipal address, to obviate a substantial risk of a mistaken search of the wrong premises in the course of the execution of the warrant. A magistrate's assumptions, if we may assume that they were in fact made, as to the identity of the officers who will execute a warrant or as to what particular knowledge such officers may have as to the identity of the property intended by the officer applying for the warrant to be searched is not in logic or law an adequate substitute for the safeguard of a facially sufficient warrant. In pragmatic terms, such assumptions before or after the fact of the execution of the warrant are lame and ineffective safeguards.

I am aware that this rationale has been resorted to frequently in the Eighth and Ninth Circuits in an attempt to uphold searches and seizures. *United States v. Gitcho*, 601 F.2d 369 (8th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979), and cases cited in the majority opinion at 866. I am unable to find any case, however, in which either the Supreme Court or this court of appeals has upheld a facially insufficient warrant on that rationale. In fact, it appears that we explicitly rejected this rationale in *Lafayette Academy*, 610 F.2d at 5. I am convinced that this court should continue to abjure a doctrine that is so unwise, unfounded, and ineffective.

Because I believe that the warrant is facially defective, it would seem at first blush that its execution could not be upheld under the doctrine of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The United States Supreme Court there noted that for the doctrine to apply, officers must have, because of the issuance of the warrant, "an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 104 S.Ct. at

3423. The Court further noted: "[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. at 3422. Thus, it would seem that because no officer could deduce with reasonable certainty even the state or municipality in which the premises authorized to be searched were located, much less the street therein or the lot number of the premises on such street, this case is precisely that case that the Court excepted from the reach of its holding in *Leon*. I am, however, constrained to accede to the majority's conclusion based upon *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), that *Leon* does in fact validate the execution of the search in this case. The operative facts of this case are nearly identical to those in *Sheppard*. Here the officer seeking the warrant did present an affidavit setting forth the address of the premises to be searched. Nevertheless, through the magistrate's inadvertence, the address did not get incorporated into the warrant. The officer then received the warrant as validly executed from the magistrate and proceeded on this record in good faith with its execution. I can perceive no significant factual distinction between the two cases. The exclusionary rule is not to be applied to redress an error of the magistrate, *United States v. Leon*, 468 U.S. at 921, 104 S.Ct. at 3420, so long as he does not abandon " 'his "neutral and detached" function.' " *Id.* at 914, 104 S.Ct. at 3417 (quoting *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964)).

Accordingly, I would uphold the order of the district court denying the motion to suppress on the authority of *Leon* and *Sheppard*. I concur in the majority's resolution of the issues in respect to the scope of the warrant and the need for the executing officers to have the warrant in their possession.