UNITED STATES of America, Appellee,

v.

Larry WARE, a/k/a Larry David Payne, Appellant.

No. 89–5017.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1989.

Decided Nov. 27, 1989.

Rehearing and Rehearing En Banc Denied Jan. 12, 1990.

---

Deborah Ellis, St. Paul, Minn., for appellant.

Douglas R. Peterson, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BOWMAN, and MAGILL, Circuit Judges.

BOWMAN, Circuit Judge.

A jury convicted Larry Ware of three federal drug offenses. The District Court[1] sentenced him to two consecutive ten-year terms in prison and one concurrent twenty-year term. For reversal, Ware argues that: (1) he was denied his right to a fair trial when the District Court granted his motion to appear pro se but then denied his request for a continuance; (2) his Fourth Amendment rights were violated because the consent he gave to search his apartment did not extend to a locked enclosure in a locked storage room located next door to his apartment, which was searched and from which crucial evidence was seized; and (3) the government obtained information about his girlfriend, a key government witness, only through plea negotiations with him and therefore she should not have been permitted to testify. We affirm.

Ware was arrested and indicted late in 1987 on three charges: Count I, aiding and abetting distribution of cocaine; Count II, conspiracy to distribute cocaine; and Count III, possession with intent to distribute cocaine. In January 1988, Ware entered a guilty plea to Count I, the remaining counts to be dropped at sentencing pursuant to a plea bargain. Ware failed to appear at his sentencing on July 7, 1988, and was arrested July 8 outside the jurisdiction. On August 9, he moved to withdraw his plea. Without ruling on that motion, the District Court set the case for trial to begin on October 5. On October 3 Ware's appointed counsel moved for a continuance, which motion was denied October 4. On October 5, the date set for start of the trial, the District Court held a hearing con-

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

cerning Ware's motion to withdraw his plea and his motion to proceed pro se. The District Court granted both motions and directed Ware's appointed counsel to continue serving as advisory counsel. At the hearing, in answer to a question from the judge, Ware's counsel indicated that she felt prepared to represent Ware "without hesitation," should the defendant wish that she continue to do so. The trial began on October 7, at which time a pro se motion for a continuance was denied.

The thrust of Ware's argument is that, once he was granted his motion to proceed pro se, he should have been given a continuance to prepare. He claims that, by failing to delay the start of trial, the court deprived him of his right to effective counsel. We reject this claim.

■■ The district court has broad discretion on the issue of continuances. *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). "A court of appeals should not overturn a trial court's denial of a continuance unless the trial court clearly has abused its discretion. Continuances are not favored and should be granted only when a compelling reason has been shown." *United States v. Weisman*, 858 F.2d 389, 391 (8th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1353, 103 L.Ed.2d 820 (1989). Abuse of discretion is determined by looking at the particular circumstances of the case. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). Our Court has articulated five factors to be examined by the trial court when exercising its discretion. Those factors include time required and already permitted for trial preparation, diligence of the moving party, conduct of the other party, the effect of delay, and the reasons movant gives for needing a continuance. *United States v. Larson*, 760 F.2d 852, 856-57 (8th Cir.) (quoting *United States v. Bernhardt*, 642 F.2d 251, 252 (8th Cir.1981)), *cert. denied*, 474 U.S. 849, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985).

■■ Our review convinces us that the District Court properly found no "compelling reason" that would merit a continuance, and therefore that the court did not abuse its discretion in denying the requested continuance. Ware had known about the upcoming trial from the time he moved to withdraw his plea on August 9, nearly two months before the beginning of the trial. His attorney indicated she was prepared to go forward and in fact assisted Ware with his defense. The court properly concluded that Ware's wish, expressed in his comments to the court, that he might have more time to study the law did not rise to the level of a need requiring a continuance. The record shows Ware was ably assisted by his advisory counsel and that the court and prosecution regularly advised him as to procedural and other trial matters. Considering these circumstances, we reject Ware's claim that the District Court's failure to grant a continuance prevented him from having a fair trial.

Ware next asserts that his conviction on Count III should be reversed, as the conviction (and the charge on which it is based) is the product of illegally seized evidence. We disagree.

■■ Soon after he was arrested, Ware consented to a search of his apartment. He executed a preprinted consent form giving permission for a "complete search" of his apartment and authorization to seize, among other items, "any drugs." The searching officers took with them a key ring that was seized from Ware upon his arrest. The ring contained the keys that Ware identified to a deputy as giving access to the apartment. Using one of the keys on the ring, which was the same brand as the two keys that opened the security door to the apartment complex and the door to Ware's living quarters, the deputy opened the door to a locked storage room approximately ten feet from Ware's apartment door. Inside, there were four to six screened-in bins or lockers. Securing one of the bins was a lock with a brand name matching one of the keys on the ring. Upon using this key to open the bin, the searching officers found a suitcase that contained a briefcase, inside which were approximately ten ounces of cocaine. That evidence was the basis for Ware's indictment on a charge of possession with intent

to distribute cocaine, Count III, and his subsequent conviction. Ware argues that the search of the bin, and consequent seizure of the cocaine, violated his Fourth Amendment rights, as the search was beyond the scope of the consent he had given to the search of his apartment.

The cocaine seized from the storage area was the subject of a suppression hearing in the District Court. The court found that Ware's consent extended to the storage room and bin, and that items found therein could constitutionally be admitted into evidence. We review such findings by a district court under the clearly erroneous standard. *See United States v. Archer*, 840 F.2d 567, 571 (8th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 365, 102 L.Ed.2d 354 (1988). "Under that standard, this court will ordinarily affirm the trial court's decision unless it is not supported by substantial evidence, it evolves from an erroneous conception of the applicable law, or we are left with a firm conviction that a mistake has been made after having considered the entire record." *United States v. Wallraff*, 705 F.2d 980, 987 (8th Cir. 1983).

A consent search is limited, of course, by the scope of the consent given. *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). In the instant case, Ware voluntarily executed a consent form authorizing a "complete search" of his apartment. Though preprinted, the form was short, clear, and easy to understand. Ware also identified for the searching officers the key ring holding the keys that would give them access for the search. On that ring were the keys that opened the door to the storage room and unlocked the bin where the cocaine was found. Ware's lease of the apartment included the storage bin and he was provided with a key giving access to the storage room. The storage room was next door to Ware's apartment, near enough to alert the searching officers that it was an appurtenance of the apartment, a fact confirmed when the officers found that Ware's key ring included the keys to both the storage room door and the locked bin. On these facts, we cannot say that the District Court's finding on the scope of Ware's consent is clearly erroneous.

This case is quite similar to *United States v. Principe*, 499 F.2d 1135 (1st Cir. 1974). In that case there was a search warrant that authorized a search of "the second-floor apartment." *Id.* at 1137. While the apartment was described with particularity as to location, the warrant did not mention a storage area. Officers nevertheless searched a cabinet located "three to six feet away from the entrance to the apartment, in a small hallway directly opposite the door that led into the apartment." *Id.* The court found that the searching officers "could reasonably suppose ... that the cabinet was appurtenant to the apartment, as in fact it was." *Id.*

Ware asks us to distinguish *Principe* on factual grounds. It seems to us, however, that the factual differences between the present case and *Principe* work against Ware's position. In our view, the case for expanding the scope of the search is even stronger here than in *Principe* because of the storage room's proximity to Ware's apartment and his identification of the key ring. As for Ware's assertion that the scope of a consent search somehow is more restrictive than the scope of a warrant search, we point out the Supreme Court's statement that the standard is the same for both: "When an official search is properly authorized—*whether by consent or by the issuance of a valid warrant*—the scope of the search is limited by the terms of its authorization." *Walter*, 447 U.S. at 656, 100 S.Ct. at 2401 (emphasis added).

Ware argues that, had he wanted to extend the scope of the search to the storage area, he not only would have told the officers they would find cash and a scale in his apartment, as he did, but "surely he would have mentioned the cocaine that would be found during the search!" Reply Brief for Appellant at 7. This argument was not raised in the District Court, and therefore it is not properly before us. In any event, we reject it as totally lacking in merit, since it is based on the unrealistic premise that a clever suspect, who volunteers that he is in possession of potentially incriminating but

ordinarily innocent items (the cash and the scale), also would volunteer that he is in possession of a highly incriminating controlled substance (the nearly ten ounces of cocaine). That would amount to a confession of guilt and is an unlikely scenario when, as was obviously the case here, the suspect retains hope that the search to which he has consented will not uncover his concealed stash of drugs. That Ware refrained from telling the officers they would find cocaine in no way undercuts the District Court's finding that Ware's consent extended to the storage area and bin.

■ The final issue Ware raises was presented by way of his pro se brief, which contends that Ware's girlfriend, a key government witness at his trial, was known to the government only because Ware mentioned her during his earlier plea bargaining with the prosecutor. At oral argument, Ware's counsel suggested that this contention is based on Federal Rule of Criminal Procedure 11(e)(6). That rule makes inadmissible against a defendant who participates in plea negotiations "any statement made in the course of plea discussions with an attorney for the government which ... result in a plea of guilty later withdrawn." Fed.R.Crim.P. 11(e)(6)(D).

This issue is not properly before us. Aside from the fact that the brief raising the issue was not timely filed, there is no record that the testimony of the witness in question was objected to in the District Court. In any event, a defendant's introduction of a potential witness to the government during plea discussions is not within the rule. *See United States v. Cusack*, 827 F.2d 696, 697–98 (11th Cir.1987) ("fruits" of plea negotiation statements held not inadmissible under Rule 11(e)(6)).

Ware's convictions are affirmed.