**STATE of Minnesota, Respondent,**

v.

**Larry PROPOTNIK, Appellant.**

**No. C9–84–104.**

Court of Appeals of Minnesota.

Sept. 25, 1984.

Review Denied Dec. 20, 1984.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Kathy King, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and FOLEY, and WOZNIAK, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellant Larry Propotnik appeals his conviction for burglary of an unoccupied building in violation of Minn.Stat. § 609.58, subd. 2(3) (1982). He claims he was denied a fair trial, should not have been given the presumptive sentence of 41 months in prison, and claims several other issues merit relief. We disagree and affirm.

## FACTS

On January 1, 1983 at about 1:20 a.m., University of Minnesota students Philip Littman, Yaron Berman and Daniel Geretz were returning to the B'nai B'rith Hillel House in Minneapolis. When they arrived, Littman encountered a man downstairs near the meat freezer. Geretz caught the man, later identified as appellant, and asked him what he was doing in the building. Appellant said he was hungry and looking for food. Geretz said he would have to call the police and appellant started running away.

Appellant entered a white van, got out and yelled "It's not my van." He ran down the street and eluded his pursuers in the dark.

The three students and an officer from the University Police Department found the white van on the other side of the street where it had been seen earlier. Officer Enger shined his spotlight on the driver. Littman, Berman and Geretz all said "That's him. That's the guy we chased."

Appellant was subsequently arrested for burglary. A search of the Hillel House determined the padlocked meat freezer had been opened, and food from the freezer was found on the counter. A hammer was found next to the food, and the freezer padlocks were later found.

At trial all three students testified. Thomas Berg, operator of the Hillel House catering service and owner of the padlocked freezer, testified that when he left the Hillel House on December 31, 1982 the freezer was padlocked. He identified the padlocks and said they were not in the same condition they were on December 31.

Appellant testified at trial. He stated he had been an alcoholic since his teens and consumed almost a case of beer from December 31 until the time of his arrest. He claimed not to remember the cafeteria or

trying to get into a freezer. He also testified he had blackouts in the past.

James Dahlquist, Executive Director of the New Visions Treatment Center, Inc., testified that in February 1983 appellant was referred to New Visions for treatment. Dahlquist was precluded from testifying appellant had been evaluated an alcoholic and from explaining blackouts and alcoholism.

Dr. Jane Rozsnafszky, treatment director of the mental health unit at Indian Health Board, testified that in her opinion appellant was in a chemically induced blackout in the early morning hours of January 1, 1983. She further testified a blackout means the person is unable to recollect what he has done.

The jury convicted appellant as charged. Appellant was sentenced to prison for 41 months.

### ISSUES

1. Was appellant denied a fair trial?

2. Did the trial court abuse its discretion in imposing the presumptive sentence?

3. Is defendant otherwise entitled to relief?

### ANALYSIS

#### I.

Appellant asserts he was denied a fair trial.

1. Appellant claims it was error to exclude certain testimony by James Dahlquist and Dr. Rozsnafszky. Appellant's counsel attempted to have Dahlquist testify appellant was an alcoholic, although Dahlquist did not evaluate appellant until over one month after the alleged burglary occurred. Dahlquist also was not permitted to explain blackouts and alcoholism. Appellant wanted Dr. Rozsnafszky to comment on appellant's ability to form intent. Appellant claims the excluded evidence was relevant on the question of intent.

■ The Minnesota Supreme Court decided in *State v. Bouwmann*, 328 N.W.2d

703 (Minn.1982), that expert testimony on the issue of a defendant's specific intent is not admissible. *Id.* at 705; *see also State v. Brown*, 345 N.W.2d 233, 238 (Minn.1984); *State v. St. Cyr*, 354 N.W.2d 479 at 481 (Minn.Ct.App.1984). Dr. Rozsnafszky's opinion whether appellant had specific intent to commit the crime was correctly excluded.

■ The question posed Dahlquist about appellant's subsequent evaluation as an alcoholic was a discretionary decision. The trial court ruled that the duration of appellant's alcoholism would be irrelevant regarding his condition at the time of the incident. The trial court also found Dahlquist was not qualified to give an expert opinion about alcoholism. We do not find fault in the trial court's determination. Expert testimony on chronic alcoholism is of dubious relevance in a voluntary intoxication defense. *State v. Johnson*, 327 N.W.2d 580, 582–83 (Minn.1982).

■ Excluding Dahlquist's testimony about blackouts was not prejudicial since Dr. Rozsnafszky testified about the subject.

■ 2. Appellant was impeached by 1975 convictions for escape, receiving a firearm, and a 1978 conviction for aggravated criminal damage to property. Minn.R. Evid. 609(a) allows the use of prior felony convictions to impeach a witness. Only an abuse of discretion will require a reversal on this ground. *See State v. Kvale*, 302 N.W.2d 650, 653 (Minn.1981). Under the balancing test adopted in *State v. Jones*, 271 N.W.2d 534, 537–38 (Minn.1978), we find no abuse of discretion here.

3. Appellant complains of the prosecutor's closing argument.

When we were in the process of selecting you as jurors, I think you will recall most of my questions were addressed to common sense. You can use it, and please do. What you cannot do, though, is you cannot judge the defendant's outward actions by your inward sense of fairness, value, good judgment and common sense. In other words, you can't say "Gosh, I

wouldn't have done that." *Because what you are doing is you are attributing your good common sense of fair play and so forth for the defendant that he doesn't have.*

Defense counsel objected to the prosecutor's comments. On appeal, appellant contends this was inadmissible character evidence or improper prosecutor comment.

 This comment was improper. Under the standards for reviewing prosecutor misconduct set forth in *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974), however, we believe the comment was harmless error. In view of the overwhelming evidence against appellant, we cannot conclude this remark played a substantial part in influencing the jury to convict. *See id.* at 127–28, 218 N.W.2d at 200–01; *see also State v. Stufflebean*, 329 N.W.2d 314, 319 (Minn. 1983).

### II.

 Appellant claims the trial court erred in imposing a 41 month prison sentence, the presumptive sentence for a severity level IV offense and a criminal history score of six or more. Ordinarily a reviewing court will not interfere with a presumptive sentence. *State v. Abeyta*, 336 N.W.2d 264, 265 (Minn.1983); *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981); *State v. Sherwood*, 341 N.W.2d 574, 577 (Minn.Ct. App.1983). We have reviewed the record and find no error in the sentence which was imposed.

### III.

Appellant personally filed a statement of his case and raised several additional claims:

 1. *Illegal Arrest*—Appellant alleges no probable cause to arrest. This is patently frivolous since he had been identified by three people as the person seen burglarizing the Hillel House.

 2. *Illegal Interrogation*—Appellant claims he was interrogated prior to being given *Miranda* warnings and such

warnings were required when he was stopped or at least placed in the squad car under arrest. General on the scene questioning is exempted from *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). Further, voluntary statements not in response to interrogation are admissible without *Miranda* warnings. *Id.* at 478, 86 S.Ct. at 1630; *see State v. Pierce*, 347 N.W.2d 829, 832–33 (Minn.Ct.App. 1984). If any statements were obtained from appellant during this confinement, they were not used at trial. *State v. Wiberg*, 296 N.W.2d 388, 393 (Minn.1980).

 3. *Violation of Prompt Arraignment*—Appellant claims he was detained beyond the 36-hour rule of Minn.R.Crim.P. 4.02, subd. 5. This issue was not raised at arraignment.

 4. *Failure to Preserve Evidence*—Appellant did not present this issue to the trial court and, thus, cannot raise it on appeal. *In the Matter of the Welfare K.T.*, 327 N.W.2d 13, 16–17 (Minn.1982).

 5. *Denial of Impartial Jury*—The fact that no native Americans were on the jury does not in itself show denial of an impartial jury. Moreover appellant failed to challenge the jury panel as required by Minn.R.Crim.P. 26.02, subd. 3.

 6. *Ineffective Counsel*—Appellant does not claim he was denied effective trial counsel. Rather, he claims his original public defender who was replaced on April 1, 1983 was ineffective. Appellant's trial occurred in November 1983. The claim that his original public defender who was replaced more than six months prior to trial was ineffective and somehow affected his rights, is absurd.

 7. *Erroneous Admission of Evidence*—The hammer and padlocks were properly admitted at trial, constituting physical evidence connecting appellant to the crim. No objection was made at trial.

 8. *Denial of Requested Instruction*—Appellant requested a jury instruction to decide whether the defendant in-

tended to commit theft over $150. Failure to give this was not error. *State v. Novak*, 273 Minn. 494, 497–99, 142 N.W.2d 252, 254–55 (1966).

9. *Improper Jury Instructions* —Appellant was charged with burglary and burglary instructions were given, following Crim. Jig 17.02. Appellant failed to object at trial to these instructions.

10. *Abuse of Prosecutorial Discretion* —Appellant asserts that only attempted burglary should have been charged. This is also a patently frivolous claim.

11. *Bias and Perjury* —Appellant asserts prosecutorial bias, judicial bias and witness perjury. These charges are wholly unsubstantiated and without merit.

### DECISION

Appellant was not denied a fair trial and was properly sentenced. His list of alleged errors are without merit and do not entitle him to any relief.

Affirmed.